**MAUGHAN & MAUGHAN LC**

200 West Douglas
Suite 350
Wichita Ks. 67202.
Tel. (316) 264-2023
Fax (316) 264-1919

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 10-10043 |
| | ) |
| Christina Childs, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MOTION TO SUPPRESS EVIDENCE

COMES NOW the defendant, Christina Childs, by and through her attorney, Carl F.A. Maughan, and hereby moves the Court for an Order suppressing the following evidence obtained in the above-captioned matter:

    A.  All physical evidence seized from or near the defendant or her residence at 1001 W. Marlboro in which the defendant had a reasonable expectation of privacy on or about August 12, 2009.

    B.  All evidence obtained as the fruits of the searches and seizure conducted by law enforcement of Defendant's residence at 1001 W. Marlboro on or about August 12, 2009.

1

C.  Any and all statements made by defendant after law enforcement conducted the searches and seizures referenced above or any statements made by the defendant in response to questioning by law enforcement on or about August 12 / 13, 2009.

D.  Any and all evidence obtained as a result of searches of and seizures made within a residence, and other buildings and property located at 3214 S. Water, Wichita, Kansas in which the defendant had an interest and a reasonable expectation of privacy on August 14, 2009 and thereafter.

In support of his motion, the defendant alleges as follows:

## FACTS

On or about August 12, 2009, 1995, law enforcement officers were dispatched to 1001 W. Marlboro in Wichita Kansas in connection with a shooting which had occurred.  Christina Childs, the defendant had called 911 after her husband, Jeffrey Childs had been shot in an apparent robbery attempt outside the house.  Mr. Childs had managed to get inside the house.  However, shots were fired into the house striking the defendant twice in the abdomen.

When law enforcement officers approached the house they entered the house ostensibly to search the residence in order to clear it of any additional victims.  At the time that they searched the house they had no reason to believe that anyone else was in the house nor that there were any victims or perpetrators of a crime located inside the house.   During this search or sweep of the house law enforcement officers opened closed doors, entered various rooms of the house, opened closets and peered into boxes, drawers and containers despite the specific objection by Ms Childs to any search of the residence.

While Ms. Childs was bleeding from a gun shot wound to the abdomen, Law

2

enforcement officers questioned her and interviewed her.  During this time while she was expressing her objection to law enforcement officers search of her residence, She was advised by Officer C.C. Welch of the Wichita Police department that he had a right to search the house and that she was, at that time in custody due to items that he had apparently seen in plain sight after he had opened a closed bedroom door and entered without consent and in the face of objections from the defendant and allegedly seen items of contraband in plain sight.  She had effectively been placed in custody earlier when she was ordered not to move from the couch by Officer Seachris who had previously erroneously advised other law enforcement officers, specifically Officer Jonkers, that he had received a verbal consent to search the residence.

Ms Childs was eventually transported to Via Christi Hospital for treatment for the gun shot wound to her stomach.  Just over 12 hours later while Christina was in hospital recovering from the shock and trauma of being shot and seeing her husband shot, and whiles she was potentially under the influence of narcotics and pain medication Officer Robert Reichenberger met with her in her hospital room.  At that time, Ms. Childs was questioned by law enforcement officers. She was unable to leave the hospital, in an environment controlled by law enforcement officers and other officials and had previously been advised that she was in custody.

A search warrant for the house was sought and obtained based, in part upon the statements of Ms. Childs and her husband as well as upon information obtained while law enforcement was searching the house conducting a sweep for additional victims and/ or perpetrators.  Once the search warrant was obtained a more thorough search was conducted at a later time.

At a later time, based, in part upon statement of Ms. Childs and her husband, and upon

3

evidence obtained while the defendant had conducted a sweep type search of the defendant's

house in the face of her opposition, a search warrant was sought, and obtained, for 3214 S.

Water.

During the searches of both properties and while questioning Ms. Childs Law

enforcement located items which they may seek to admit into evidence in the instant case.

Defendant maintains that the evidence was obtained in violation of her rights under the fourth,

fifth and Fourteenth Amendments to the United States Constitution.

### ARGUMENTS AND AUTHORITIES

The evidence which the defendant seeks suppressed was obtained as a result of

unreasonable and unconstitutional searches and seizures which infringed upon any reasonable

expectations of privacy in his residence, papers and effects and were undertaken in violation of

his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be

free from unreasonable governmental intrusion in the following respects:

1.  The Fourth Amendment of the United State Constitution  provides that "The

    right of the people to be secure in their persons, houses, papers and effects,

    against unreasonable searches and seizures, shall not be violated, and no

    warrants shall issue, but upon probable cause supported by oath or

    affirmation, and particularly describing the places to be searched and the

    persons or things to be seized."

2.  Mr. Childs was seized for Fourth Amendment purposes when she was ordered

4

to sit on the couch and not to move, and later advised that she was in custody by law enforcement officials and her freedom of movement was restrained by law enforcement officers acting under color of authority. ***Delaware v. Prouse,*** 440 U.S. 648, 653 (1979).

3. The defendant ,was seized by law enforcement officers without probable cause or reasonable, articulable suspicion to believe that she was committing, had committed or was about to commit a crime. ***Terry v. Ohio***, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); ***Michigan v. Long***, 463 U.S. 1032, 77 L.Ed.2d 1201, 103 S.Ct. 3469 (1983);

4. The Government cannot bear its burden of proving the searches of the defendant, and the defendant's residence  and other property or the seizure of the defendant and the items located in her residence which followed were justified by any recognized exception to the warrant requirements of the Fourth Amendment. ***Coolidge v. New Hampshire***, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971).

5. Prior to obtaining any search warrant law enforcement entered Ms. Childs home without a warrant a searched the residence, ostensibly for other individuals. The warrantless entry into the defendant's property was unreasonable under the Fourth Amendment to the U. S. Constitution and Section 15 of the Kansas Bill of Rights.  The government cannot bear its burden of proving that a valid exception to the warrant requirements of those

5

constitutional provisions justified this intrusion. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Payton v. New York*, 445 U.S. 573, 63 L.Ed.2d 639, 100 S.Ct. 1371 (1980);

6.   The Government cannot bear its burden of proving, that there was valid exigent circumstances, that would excuse the absence of a warrant prior to entry. In *Maryland v. Buie, 494 U.S. 325 (1990)*  The United States Supreme Court considered what level of justification is necessary under the 4th and 14th amendments to the Constitution before police officers who were affecting an arrest in a person's home pursuant to an arrest warrant may conduct a warrantless "protective sweep" of the premises.  The court's concluded that such a sweep could be justified if:

> "The searching officer possessed a reasonable belief based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *id* at 327.

7.   In coming to this decision, the court held that a balancing test should be utilized to determine when such a protective sweep would be justified. Under this test the intrusion on the individual's fourth amendment against the government interests.  The court further drew an analogy between the protective sweep and the frisk for weapons discussed in *Terry v. Ohio.* 392 U.S. 1 (1968),  and the search of an Automobile for weapons that might be in the immediate control of the occupants as discussed in *Michigan v. Long.*

6

463 U.S. 1032 (1983).  The Court explained that in **Terry** and **Long** the courts had been concerned with the <u>immediate</u> (emphasis added) interest of the police in assuring themselves that the individual was not armed with or able to gain <u>immediate</u> control over a weapon.  **Buie** at 333.

In exploring this analogy the Court concluded that any sweep beyond the immediate vicinity of the arrestee" there must be articulable facts which, taken together with the rational inferences from those facts , would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. " **Buie** at 334.

The court then took pains to ensure that the search authorized in **Buie** was different in scope from the  search that the court had disapproved of in **Chimel v. Callifornia** 395 U.S. 752 (1969) noting that the protective sweep was far removed from the top to bottom search involved in  **Chimel** and "...moreover, it is decidedly not 'automatic' but may be conducted only when justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." **Buie**  at 336.

Similarly, we can assume that a sweep to "secure" evidence or the premises would require a reasonable belief based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer in believing that the area swept harbored an individual who was, was about to, or intended to destroy evidence.

7

8.  In the instant case, the police had no articulable facts on which they could base a reasonable and articulable suspicion that the house harbored any other individual other than Ms. Childs and her husband let alone one who posed an immediate danger to the integrity of any evidence found therein.

9.  Justice Stevens commented in his concurring opinion in **Buie** that the sweep must be protective and that the officer must have a reasonable basis for believing that their search will reduce the danger of harm to themselves or of violent interference with their mission.  He then pointed out that it would be the State's burden to show "...not only that someone in the basement might attack them... but also that it would be safer to go down the stairs instead of simply guarding them from above until the [suspect]  had been removed from the house."  **Buie** Stevens Concurring opinion at 338.

10. Similarly, the Officers in the instant case bear the burden of showing, not only that they feared that there was someone else in the house but that the person might destroy any evidence therein and that any such evidence could not be secured by other means less intrusive than an unwarranted search of the premises.

11. Any search warrants that may have been obtained for the either of the properties discussed herein and all evidence discovered as a result of the searches and seizures are fruits of the proverbial poisoned tree and should be suppressed as such. **Florida v. Royer**, 460 U.S. 491, 75 L.Ed.2d 229, 103

8

S.Ct. 1319 (1983); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

12. The defendant was then subjected to interrogation at the hands of the government.  The defendant contends that the statements allegedly made were obtained in violation of the Fourth, Fifth and Fourteenth Amendments to the U. S. Constitution, and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

13. The government will be unable to show that any statements made by the defendant were subject to a knowing, intelligent and voluntary waiver of her right to be free from self incrimination. Nor that such statements were made voluntarily.  *Jackson v. Denno* 378 U.S. 368 (1964)

14. In *Jackson v. Denno* 378 U.S. 368 (1964) the Court held that basing a conviction, in whole or in part, upon a confession that is coerced rather than freely and voluntarily given deprives the defendant of due process of law. This, the court held, is true regardless of the veracity of the confession and the weight of other evidence to support the conviction. *Jackson v. Denno* 378 U.S. 368, 376.

15. The statements allegedly made by the defendant were made while she was in custody, or reasonably believed that she was in custody, and their admissibility depends in part on the validity of the waiver of the defendant's *Miranda* rights.  However, these statements were made while the defendant, was scared, in pain, under the influence of pain relieving medication, was

9

isolated from the public, was in shock after being shot and having witnessed her husband shot, had witnessed her home searched against her express will, and transported to a hospital where she had little or no freedom of movement. Defendant maintains that under these circumstances no alleged waiver of her right to remain silent could have been the true product of a voluntary, intelligent an knowing waiver of her rights but rather would have been the product of the coercive effects of the environment and the defendant's position.  Any alleged waiver of his right to remain silent would be a mere acquiescence to apparent or claimed authority.

WHEREFORE, for the reasons set forth herein and in any memorandum of law that may be submitted by counsel and in any argument presented in support of this motion, the defendant prays that the Court issue an order suppressing the aforesaid evidence  and any evidence found as fruits of the illegal searches and seizures; and for such other and further relief as to the Court seems just. Counsel respectfully requests a hearing and oral argument on this motion.

<div style="margin-left:50%">

Respectfully submitted,
MAUGHAN& MAUGHAN LC

By s/ Carl F. A. Maughan
Carl F.A. Maughan, S.C. #18447
200 West Douglas, Suite 350
Wichita, Kansas 67202
Telephone:  (316) 264-2023
Facsimile:  (316)  264-1919
Carl@mandmattorneys.com
*Attorney for Christina Childs*

</div>

10

## CERTIFICATE OF SERVICE

I hereby certify that on the ___10th___ day of May, 2010,  I electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties with an interest in this case including, but not limited to the following:

Debra Barnett, Office of the United States Attorney
Debra.Barnett@usdoj.gov
*Representing Plaintiff, United States of America*

A copy was mailed by first class mail to Christina Childs.

By s/ Carl F. A. Maughan
Carl F.A. Maughan, S.C. #18447
200 West Douglas, Suite 350
Wichita, Kansas 67202
 Telephone:  (316) 264-2023
Facsimile:  (316)  264-1919
Carl@mandmattorneys.com
*Attorney for Defendant*

11